IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| ONE TRIPLE TWO, LLC, *et al.*, | * |
| Plaintiffs, | * |
| v. | * |
|  | *     Civil No. 22-2027-BAH |
| GEORGE DIVEL III *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiffs One Triple Two, LLC, ("One Triple"), Benjamin Dodge ("Dodge"), Patrick Lasseter ("Lasseter"), and Adam Berkowitz ("Berkowitz," and, collectively, "Plaintiffs") brought this suit against Defendant George Divel III ("Defendant" or "Divel") and twenty unidentified John Does,[1] alleging several contract and torts claims relating to an underlying business transaction. ECF 1, at 1, 13–21. Pending before the Court is Defendant's motion to dismiss, ECF 60. Plaintiffs oppose this motion, ECF 61, and Defendant filed a reply in support, ECF 62. All filings include memoranda of law and exhibits.[2] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, Defendant's motion to dismiss is **GRANTED in part and DENIED in part.**

---

[1] As the complaint does not plead any facts that reference the John Doe defendants or in any way indicate their involvement with the events underlying this action, the complaint is DISMISSED without prejudice with respect to the John Doe defendants. *See Blake v. Race*, 487 F. Supp. 2d 187, 192 n.1 (E.D.N.Y. 2007) (dismissing unnamed John Doe defendants in a footnote when the plaintiff failed to "specify the role of any unnamed defendants in the infringing conduct").

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

**I.      BACKGROUND**

This case arises out of an alleged failed agreement for an entity with which Defendant is affiliated, TCP 1222, LLC ("TCP 1222"), to purchase the vast majority of One Triple's assets and 80% of the stock held by the individual Plaintiffs in another entity, Portland Innovations ("Portland"). ECF 1, at 5; ECF 1-1, at 1–24 (purchase agreement between TCP 1222 and Plaintiffs). In June 2018, TCP 1222, through Defendant, his associate, and their broker, approached Plaintiffs about purchasing the Portland stock and the One Triple assets. ECF 1, at 6. That same month, an associate of Defendant sent an email on behalf of himself and Defendant to Plaintiffs with "proof of funds" sufficient to purchase the Portland stock and the One Triple assets. *Id.* at 6–7; ECF 1-4, at 1–4. This email included a screenshot of a Bank of America dashboard showing access to several accounts with combined funds of more than three million dollars. *See* ECF 1-4, at 1–4. The screenshot did not indicate whose Bank of America profile it displayed, nor did it show the relationship between the person whose profile it displayed and the displayed accounts.[3] *Id.* In July 2018, one of Defendant's associates sent Plaintiffs a letter of intent, drafted by Defendant, to purchase the One Triple assets and the Portland stock. ECF 1, at 7.

In November 2018, Plaintiffs and TCP 1222 signed the "Original Purchase Agreement," which indicated that TCP 1222 was to pay $2,500,000 to Plaintiffs in exchange for the assets and stock. ECF 1, at 6–7. The Original Purchase Agreement indicated that it was to be "governed and construed and interpreted in accordance with the laws of the State of California" and that each party agreed "to commence any action, suit or proceeding relating hereto only in the courts of the State of California located in Oakland, California." ECF 1-1, at 20–21. Pursuant to the Original

---

[3] For example, the screenshot did not indicate if the profile holder was the sole owner of these accounts or if they were joint accounts. *See* ECF 1-4, at 1–4.

Purchase Agreement, TCP 1222 made an initial payment of $250,000 as a deposit, with the rest of the purchase price to be paid in future installments. *Id.* at 7.

One of the primary assets owned by One Triple was the lease of a property in Oakland, California, along with all of the equipment, fixtures, and personal property at that site. ECF 1, at 5–6. In particular, this property was equipped with the specialty equipment required for "cannabis cultivation, manufacturing, distribution, and non-storefront retail," all of which is legal at the state level in California. *Id.* Prior to entering into the sale agreement with TCP 1222, Plaintiffs had used the Oakland property for cannabis cultivation. *See id.* at 8 (noting that cultivation activities had to be stopped before closing on the agreement, suggesting that cultivation activities were ongoing beforehand).

On February 4, 2019, Plaintiffs notified TCP 1222, as well as Defendant and his associates, that all of Plaintiffs' pre-sale duties under the Original Purchase Agreement had been completed and Plaintiffs requested that closing occur within five days. ECF 1, at 8. Nearly five days later, on February 8, 2019, TCP 1222's attorney replied that TCP 1222 was "working through some 'administrative issues' and asked to delay the closing." *Id.* Defendant informed Plaintiffs that those issues related to retrieving money from a retirement account, and Defendant "led Plaintiffs to believe" that the retirement account belonged either to Defendant or one of his associates personally. *Id.*

TCP 1222's "administrative issues" continued for some time, and TCP 1222 and Plaintiffs amended the Original Purchase Agreement twice, each time increasing the purchase price and extending the deadline for closing. ECF 1, at 9–10. The twice-amended Original Purchase Agreement ("the Purchase Agreement") increased the total price of the purchase to $2,550,000 and extended the closing date to March 20, 2019. *Id.* at 10.

3

Pursuant to the Purchase Agreement, TCP 1222 "took possession" of the Oakland property and 80% of Plaintiffs' Portland shares on March 20, 2019. ECF 1, at 10. TCP 1222 simultaneously provided Plaintiffs with a promissory note, as dictated by the Purchase Agreement, for $1,500,000 to be paid by TCP 1222 to Plaintiffs. *Id.* TCP 1222 and Plaintiffs also entered into a Security Agreement pursuant to the Purchase Agreement which granted Plaintiffs a security interest in "all of the interests and assets created by or transferred by means of the Purchase Agreement . . . to secure [TCP 1222's] obligations to Plaintiffs under the Purchase Agreement and Promissory Note." *Id.*

On April 15, 2019, things came to a head when TCP 1222 "notified Plaintiffs that they did not have sufficient funds for Closing as they were still waiting" on the retirement funds. ECF 1, at 11. "Later that day, [TCP 1222] came clean and disclosed that they had been relying on investor funds all along and that their investors had backed out." *Id.* Plaintiffs had not previously been aware that the purchase was investor funded. *Id.*

After receiving this news, Plaintiffs were confronted with additional problems at the Oakland property. According to Plaintiffs, TCP 1222 had failed to make timely payments to the landlord, had failed to make utility payments, and had failed to maintain or secure the property, resulting in theft and property destruction. ECF 1, at 12. Plaintiffs "facilitated the repair and replacement of doors" on the property on June 11, 2019, in order to protect the collateral stored there. *Id.* On June 12, 2019, TCP 1222 surrendered the property to the landlord for failure to make rental payments. *Id.* On June 18, 2019, Plaintiffs entered into an agreement with the landlord of the property to reobtain possession of the site in an attempt to mitigate damages. *Id.*

Plaintiffs swiftly filed an action in the Alameda County Superior Court in California against TCP 1222, Defendant, and all of Defendant's associates and other affiliated entities

involved in the failed sale. ECF 1, at 12–13. Each defendant appeared in that case, "except for defendant D[ivel] who moved to quash service on the grounds that the California court could not obtain personal jurisdiction over him." *Id.* at 13. Plaintiffs retook possession of the collateral that had been transferred to TCP 1222 and mitigated damages by selling the collateral for $750,000. *Id.*

After the Alameda County Superior Court quashed service of Defendant in the state court action, Plaintiffs filed this lawsuit in the United States District Court for the Northern District of California, Oakland Division. ECF 1, at 1–2. In response to Defendant's continued insistence that the courts of California, both at the state and federal level, lack personal jurisdiction over him, Plaintiffs moved to transfer the case to this Court, as Defendant is a resident of Maryland. ECF 32, at 1–2. The California District Court granted this motion, ECF 34, and the case was transferred to this Court in August 2022, ECF 35.

Plaintiffs assert that TCP 1222 is an "alter ego" of Defendant and that, as such, Defendant should be liable for TCP 1222's actions. ECF 1, at 3–4. Plaintiffs bring eight counts against Defendant: (1) breach of the Purchase Agreement; (2) breach of the security agreement; (3) breach of the promissory note; (4) intentional interference with prospective economic advantage; (5) negligent interference with prospective economic advantage; (6) intentional misrepresentation; (7) negligent misrepresentation; and (8) negligence. *Id.* at 13–19. Defendant now moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6). *See* ECF 60.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(3) provides that a defendant may move for dismissal due to improper venue. Dismissal under this provision is appropriate "only when venue is 'wrong' or 'improper' in the forum in which it was brought." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013). Venue is proper in:

1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  So long as venue is proper under one of the provisions of § 1391(b), a complaint should not be dismissed under Rule 12(b)(3).  *Atl. Marine Const. Co.*, 571 U.S. at 56 ("When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b).  If it does, venue is proper; if it does not, venue is improper[.]")

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate where the complaint "fail[s] to state a claim upon which relief can be granted."  In deciding a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (citing *Singer v. Reali*, 883 F.3d 425, 437 (4th Cir. 2018)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) (noting that a complaint must contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief").  "The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'"  *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).  At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's]

6

claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

The Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). Here, Plaintiffs have attached several documents to the complaint, including the Purchase Agreement, ECF 1-1, at 1–24, and the email showing the proof of funds sent to Plaintiffs on behalf of Defendant, ECF 1-4, at 1–4. The Court considers these attached documents as well as the complaint itself in its analysis.

### III. DISCUSSION

Defendant argues that each count in the complaint should be dismissed for several reasons. First, Defendant claims that the entire complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(3) for improper venue. ECF 60-1, at 12. Next, he claims that each count fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Id.* at 13–26. He claims that counts one through seven fail to state a claim as a matter of law because the subject matter at issue in the underlying contract and alleged related tortious actions is federally illegal—namely, the cultivation and sale of cannabis. *Id.* at 13–16. Alternatively, he claims that Plaintiffs fail to plead that TCP 1222 was an alter ego of Defendant, and that as such their contract claims in counts one through three must fail. *Id.* at 17–21. He further claims that Plaintiffs' interference with economic advantage claims must fail because Plaintiffs failed to identify an existing economic relationship subject to the alleged interference. *Id.* at 21–22. The misrepresentation claims in counts six and seven, Defendant claims, must fail because Plaintiffs failed to plead justifiable reliance on the alleged misstatements. *Id.* at 22–25. Finally, Defendant argues that the negligence claim in count

7

eight must be dismissed because Plaintiffs failed to plead that Defendant breached any duty owed to them. *Id.* at 25. The Court will address each of these arguments in turn.

      **A.**      **California substantive law applies to this case.**

As a preliminary matter, the Court must first determine what law applies to these claims. Generally speaking, a federal district court sitting in diversity applies the substantive law of the state in which it sits. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). When a case is transferred pursuant to 28 U.S.C. § 1404(a), however, the law of the state in which the case was originally filed applies. *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) ("[W]here the defendants seek transfer [under § 1404(a)], the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue."); *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) (holding that "transferor law should apply regardless of who makes the § 1404(a) motion"). There is an exception, however, for cases that were initially filed in a jurisdiction in which the original court lacked personal jurisdiction over the defendant; in such a case, the law of the state of the transferee court applies. *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 991 (11th Cir. 1982).

Here, this case was transferred to this Court from the Northern District of California pursuant to 28 U.S.C. § 1404(a). *See* ECF 34, at 1–2. But Plaintiffs moved to transfer this case largely because of personal jurisdiction concerns over Defendant in courts in California. *See* ECF 32, at 2. Luckily, the Court need not delve into the question of California's jurisdiction over Defendant as the parties agree that California substantive law governs this action because the Purchase Agreement provides that it "shall be governed and construed and interpreted in accordance with the laws of the State of California." ECF 1-1, at 20; ECF 60-1, at 11 (arguing that California law applies to this action); ECF 61, at 5 (same). As such, the Court will apply California *substantive* law. The procedural law of this case, however, will still be determined by

the Federal Rules of Civil Procedure. *See Stone & Webster, Inc. v. Baker Process, Inc.*, 210 F. Supp. 2d 1177, 1182 (S.D. Cal. 2002) ("A general choice-of-law clause will only be construed as incorporating state substantive laws, NOT state procedural laws." (capitalization in original)).

> **B.  Venue is proper in the District of Maryland, so the complaint will not be dismissed under Rule 12(b)(3).**

Defendant argues that this case should be dismissed under Federal Rule of Civil Procedure 12(b)(3) because the Purchase Agreement contains a forum selection clause specifying the California state court in Oakland, California, as the exclusive forum "for the purposes of any suit, action or other proceeding arising out of [the Purchase] Agreement or any transaction contemplated [t]hereby." ECF 60-1, at 12. But Rule 12(b)(3) does not allow for dismissal of a case due to failure to comply with a forum selection clause. *Atl. Marine Const. Co.*, 571 U.S. at 55. While a forum selection clause governs the *forum* of an action, it does not determine the *venue*. *See id.* at 56 ("It is certainly true that, in some contexts, the word 'venue' is used synonymously with the term 'forum,' but § 1391 makes clear that venue in 'all civil actions' must be determined in accordance with the criteria outlined in that section.").

Dismissal is only appropriate under Rule 12(b)(3) when venue is improper under federal law.[4] *Atl. Marine Const. Co.*, 571 U.S. at 55. Under 28 U.S.C. § 1391(a), venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located." Here, Defendant is the sole named defendant, and he is a resident of Maryland. *See* ECF 12, at 2 (showing Defendant's address as one in Maryland). Therefore, venue is proper in the District of Maryland, and the complaint will not be dismissed for improper venue under Rule 12(b)(3).

---

[4] The proper remedy for the violation of a forum selection clause is a motion to transfer the case to the identified forum or a motion invoking the *forum non conveniens* doctrine and seeking that the case be refiled in the appropriate forum. *Atl. Marine Const. Co.*, 571 U.S. at 61.

C. **Regardless of the business in which the entities that are the subject of the underlying contract engage, the agreements at issue are enforceable in federal court.**

Defendant argues that counts one through seven of the complaint should be dismissed "as each is precluded as either an attempt to have the Court enforce an illegal contract or have the Court award relief that would endorse a violation of federal law." ECF 60-1, at 13. Plaintiffs counter that the underlying agreement was lawful in California, and that, moreover, "[e]ven where contracts concern illegal objects, where it is possible for a court to enforce a contract in a way that does not require illegal conduct, the court is not barred from according such relief." ECF 61, at 5–6 (citing *Mann v. Gullickson*, No. 15-cv-03630, 2016 WL 6473215, at *7 (N.D. Cal. Nov. 2, 2016)).

This Court is no stranger to the argument that contracts concerning cannabis businesses cannot be enforced by a federal court. *See Bartch v. Barch*, Civ. No. 23-0101-BAH, 2024 WL 943430, at *3–5 (D. Md. Mar. 5, 2024) (addressing the debtors' argument that a breach of contract judgment could not be enforced against them because the profits of the business at issue derived from the sale of cannabis). Indeed, this Court has previously found that it was inappropriate to use its authority to facilitate the issuance of licenses for cannabis sale. *See Jensen v. Md. Cannabis Admin.*, Civ. No. 24-0273-BAH, 2024 WL 811479, at *8 (D. Md. Feb. 27, 2024) (reasoning that "it is not the place of a federal court to facilitate federally prohibited activity" with respect to a dormant commerce clause challenge to a state cannabis retail license lottery). Perhaps there is a situation in which this Court would find that the enforcement of a contract concerning cannabis would be inappropriate, as well. This case, however, does not present that situation.

The contract at issue here is not a contract for the sale of cannabis. Rather, it is a contract for the sale of a business (Portland Innovations) and the assets of another business (One Triple). *See* ECF 1, at 5. This Court has previously enforced the decision of another district court ordering

10

a defendant to pay money damages to a plaintiff for the breach of a contract regarding a cannabis business. *See Bartch*, 2024 WL 943430, at *3–5. Like the underlying decision in that case from the District Court for the District of Colorado, this Court agrees that "[i]t is not the law that federal courts cannot hear or resolve disputes arising from cannabis companies." *Barch v. Barch*, No. 118CV03016RBJMDB, 2024 WL 480625, at *3 (D. Colo. Feb. 1, 2024) (citing *Kenny v. Helix, Inc.*, 939 F.3d 1106, 1108–09 (10th Cir. 2019)). Furthermore, the relief that Plaintiffs request—money damages—does not require any violation of federal law; it merely requires payment from one party to another. *See* ECF 1, at 19–20 (requesting money damages).

As such, none of Plaintiffs' claims are dismissed for failure to state a claim merely because the entities that are the subjects of the Purchase Agreement engage in cannabis-related business.

### D. Plaintiffs' breach of contract counts must be dismissed because Plaintiffs have failed to plead alter ego liability for Defendant as to TCP 1222's actions.

Defendant claims that Plaintiffs' breach of contract claims must fail because (1) Defendant himself was not a party to any contract at issue, and (2) Plaintiffs fail to plead that TCP 1222 is an alter ego of Defendant. ECF 60-1, at 17–21. Plaintiffs do not dispute that Defendant himself was not a party to the contracts at issue, but they assert that the allegations in the complaint "more than adequately" plead that TCP 1222 was an alter ego of Defendant. ECF 61, at 8–9; *see also* ECF 1-1, at 23, 55, 58, 65, 75, 83–84, 92, 134–51 (showing Defendant signed agreements only in a representative capacity on behalf of TCP 1222, not in his individual capacity); ECF 1-3, at 1–2 (same).

In order to plead that a corporation is an "alter ego" of an individual such that the individual can be held liable for the corporation's legal obligations, a plaintiff must plead facts that demonstrate "such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased . . . [and] that an adherence to the fiction of the separate

11

existence of the corporation would . . . sanction a fraud or promote injustice." *First W. Bank & Tr. Co. v. Bookasta*, 73 Cal. Rptr. 657, 659 (Cal. Ct. App. 1968) (citation omitted).

Here, the complaint recites factors that the California courts have found indicate that a corporation is an alter ego of an individual, offering allegations such as "DIVEL . . . disregarded legal formalities and failed to maintain arm's length relationships among the corporate entities and [his] personal affairs" and "DIVEL . . . used the corporate entities as a mere shells, instrumentalities or conduits." ECF 1, at 3–4; *see Associated Vendors, Inc. v. Oakland Meat Co.*, 26 Cal. Rptr. 806, 813–15 (Cal. Ct. App. 1962) (identifying as factors pertinent to a determination that a corporation was an alter ego of an individual, *inter alia*, "the disregard of legal formalities and the failure to maintain arm's length relationships among related entities" and "the use of a corporation as a mere shell, instrumentality or conduit"). Defendant claims that "[t]hese conclusory allegations are not sufficient to support Plaintiffs' alter ego claims." ECF 60-1, at 19. Plaintiffs assert that the allegations in the complaint are more than sufficient because "neither California law, nor federal notice pleading, require more than conclusory allegations of *alter ego*." ECF 61, at 8.

But though Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint still "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The only support Plaintiffs offer to support their contention that wholly conclusory allegations are sufficient to plead an alter ego theory of liability are California state cases, but though California *substantive* law governs this action, the *procedural* elements of this case are governed by federal law, as noted above. "The Federal Rules of Civil Procedure apply irrespective of the source of subject matter jurisdiction, and irrespective of

12

whether the substantive law at issue is state or federal." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003); *see also German v. Mercedes-Benz, LLC*, Civ. No. 21-09587-SB-JC, 2022 WL 1407944, at *1 (C.D. Cal. Feb. 14, 2022) ("[T]he pleading standards under the federal rules are procedural.").

Federal cases from the Districts of California make clear that "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specific facts supporting both of the necessary elements." *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015). In *Gerritsen*, the court found that the following allegations were conclusory and insufficient to plead the existence of alter ego liability:

> The allegations that substantiate Gerritsen's recitation of this element of alter ego liability include: (1) that Katja was a wholly-owned subsidiary of, and was completely dominated, directed, and controlled by New Line; (2) that WB acquired New Line in a corporate transaction, after which New Line and Katja became "shell corporations wholly owned by WB and mere conduits through which WB conducts business"; (3) that to the extent New Line and Katja do any business, it is at the sole direction and for the sole benefit of WB; and (4) that WB exercises complete management, control, ownership, and domination over New Line and Katja.

*Id.* at 1044. These allegations mirror those in the complaint here. *See* ECF 1, at 3–4. Though Plaintiffs contend that the complaint went beyond these conclusory statements by also pleading "that Divel's assets, or assets that Divel controlled, were offered as the proof of funds to induce the transaction," ECF 61, at 9, this one fact alone is not enough to render the claim that there was a unity of interest between TCP 1222 and Defendant plausible.

Additionally, the complaint includes no facts at all to support the second element of an alter ego claim: that a failure to apply the doctrine would result in injustice. *See* ECF 1, at 3–4 (offering statements only relating to the unity of interest between TCP 1222 and Defendant); *see also Gerritsen*, 116 F. Supp. 3d at 1143 (explaining that a failure to plead facts showing that "an inequitable result will follow if the corporate separateness of the defendant entities is not

13

disregarded" would be enough to doom an alter ego claim even if a plaintiff successfully plead unity of interest). Plaintiffs' explanation in their opposition to Defendant's motion to dismiss that the potential injustice is "obvious" cannot compensate for a complete lack of facts to support this element in the complaint in the evaluation of a motion to dismiss under Rule 12(b)(6).

Because the complaint fails to state sufficient facts to support either element of an alter ego claim, the breach of contract claims must be dismissed as they rest upon the assertion that TCP 1222 is an alter ego of Defendant. And because the duty upon which the negligence claim in count eight rests stems from the contracts to which Defendant was not individually a party, count eight too must fail. *See* ECF 61, at 10–11 (acknowledging that Defendant's liability on count eight runs through alter ego liability for TCP 1222). Thus, counts one, two, three, and eight are dismissed without prejudice.

> **E.     Plaintiffs do not state a claim for intentional or negligent interference with prospective economic advantage because they fail to identify an economic relationship that was subject to interference.**

Defendant argues that Plaintiffs' counts alleging intentional and negligent interference with prospective economic advantage must fail because Plaintiffs failed to identify any economic relationship that was subject to the alleged interference. ECF 60-1, at 21. Plaintiffs counter that the economic relationship at issue is that between Plaintiffs and their customers, which they claim is sufficient under California law. ECF 61, at 9.

There are five elements to a claim of intentional interference with prospective economic advantage:

> (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

*Youst v. Longo*, 729 P.2d 728, 733 n.6 (Cal. 1987).  The elements of negligent interference with prospective economic advantage are substantially the same except that the defendant need only act negligently and be in a position such that a reasonable person would be aware that "if [they] did not act with due care [their] actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship." *Venhaus v. Shultz*, 66 Cal. Rptr. 3d 432, 435–36 (Cal. Ct. App. 2007).  Thus, an economic relationship with a third party is a requirement for both claims.

As Defendant points out, "[n]ot a single allegation in the Complaint suggests that Plaintiffs' business was profitable prior to the [t]ransaction." ECF 62, at 11.  While the complaint refers to "Plaintiffs' prospective economic advantage," ECF 1, at 15–16, the complaint makes no mention of Plaintiffs' customers or business relationships with any entity other than those involved in the potential purchase of Plaintiffs' business at issue.  ECF 1, at 1–21 (failing to describe any other business relationship).

Furthermore, "[a]lleged relationships with 'potential customers' are insufficient because they are nothing more than 'speculative economic relationship[s].'" *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1033 (N.D. Cal. 2018) (quoting *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1312 (N.D. Cal. 1997)).  Even references to "repeat buyers," without more, is not sufficient to plead the existence of an economic relationship with a third party for a claim of interference with prospective economic advantage.  *George v. eBay, Inc.*, 286 Cal. Rptr. 3d 492, 506–07 (Cal. Ct. App. 2021) (holding that "[m]erely referring to unidentified 'repeat buyers' is insufficient, when there are no facts to show that the unidentified buyers were likely to purchase" the goods at issue).

Here, given that the complaint offers no facts relating to Plaintiffs' customers, either past or present, it cannot be said that Plaintiffs' relationship with future potential customers, as pled in the complaint, is anything more than a "speculative economic relationship." *Cline*, 329 F. Supp. 3d at 1033. As such, Plaintiffs have failed to plead the existence of an economic relationship with a third party sufficient to state a claim for intentional or negligent interference with prospective economic advantage. Accordingly, counts four and five of the complaint are dismissed without prejudice.

### F. Plaintiffs successfully state claims for intentional and negligent misrepresentation.

Defendant claims that Plaintiffs' claims for intentional and negligent misrepresentation, counts six and seven, must fail because the complaint "forecloses the possibility that Plaintiffs reasonably relied on Defendant['s] alleged misrepresentations." ECF 60-1, at 22. Specifically, Defendant argues that the "proof of funds" on which Plaintiffs claim to have relied in entering the Purchase Agreement with TCP 1222 did not actually purport to show that TCP 1222 itself had access to those funds, and that the assurances in the Purchase Agreement itself supplanted any prior representations that Defendant had made regarding TCP 1222's funding. ECF 60-1, at 22–24. Plaintiffs counter that the proof of funds induced Plaintiffs to enter into the contract, resulting in a fraud independent of the contract, and that the proof of funds was provided by Defendant, making him individually liable. ECF 61, at 10.

To state a claim for intentional misrepresentation, also known as fraud, a plaintiff must plead "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 274 (Cal. 2004) (citing *Lazar v. Superior Court*, 909 P.2d 981, 984 (Cal. 1996)). The elements for

negligent misrepresentation are much the same, except that instead of acting with "knowledge of falsity," the defendant must have acted "without reasonable ground for believing [the alleged misrepresentation] to be true." *Aton Ctr., Inc. v. United Healthcare Ins. Co.*, 311 Cal. Rptr. 3d 564, 593 (Cal. Ct. App. 2023). The only element that Defendant challenges the pleading of is justifiable reliance, which is essential to both misrepresentation claims. ECF 60-1, at 22–24.

"Reliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction." *All. Mortg. Co. v. Rothwell*, 900 P.2d 601, 608–09 (Cal. 1995) (citation omitted). The question of whether a plaintiff's reliance was justifiable is a question of fact, but it "may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts." *Id.* (citation omitted).

Here, the complaint alleges that Defendant sent a proof of funds to Plaintiffs showing access to more than three million dollars, and that Plaintiffs relied on the assertion that TCP 1222 would be able to use those funds to complete the transaction in Plaintiffs' decision to provide Defendant with "access to a cloud database that contained numerous files" and move forward with entering into the Original Purchase Agreement. ECF 1, at 6–7, 16–17; ECF 1-4, at 1–4. To survive a motion to dismiss, a plaintiff need only state a "plausible" claim for relief. *Iqbal*, 556 U.S. at 678. Plaintiffs clear this bar on the element of justifiable reliance. Plaintiffs have pled that the proof of funds email served to assure them of TCP 1222's financial status sufficient to convince them to move forward with the transaction, and there are no facts to suggest that they would have moved forward otherwise. *See* ECF 1, at 6–7 (stating that, after receiving the proof of funds email, Plaintiffs moved forward with negotiations with TCP 1222 "with the understanding that

17

[Defendant and TCP 1222] had sufficient funds to consummate the Transaction"). Though a jury may ultimately find that such reliance was not reasonable, the facts as stated in the complaint do not give rise to an inference that their reliance was unjustifiable as a matter of law. Plaintiffs were hoping to complete a multimillion-dollar deal; Defendant provided a financial document showing access to more than three million dollars; and Plaintiffs acted in reliance upon that document in moving forward. These facts are enough to plead justifiable reliance.

The fact that Plaintiffs had other information upon which to rely in addition to the proof of funds email does not diminish Plaintiffs' claim of justifiable reliance. *See* ECF 62, at 12 (arguing that Plaintiffs could not have reasonably relied on the proof of funds email because Plaintiffs also received significant pre-closing deposit funds, obtained a promissory note from TCP 1222, and signed a security agreement with TCP 1222). When Plaintiffs received the original proof of funds email, they had not received the pre-closing deposits or the promissory note from TCP 1222, and they had not yet entered into the security agreement with TCP 1222. At the time Plaintiffs began providing access to TCP 1222 for due diligence purposes and decided to continue discussions with TCP 1222 about the transaction, the complaint alleges they were reasonably relying on the proof of funds email. This is sufficient to state a claim for intentional and negligent misrepresentation.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, ECF 60, is **GRANTED** in part and **DENIED** in part. Counts one, two, three, four, five, and eight are **DISMISSED without prejudice.**

A separate implementing Order will issue.

Dated: May 13, 2024                                      /s/
                                                   Brendan A. Hurson
                                                   United States District Judge