# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| ONE TRIPLE TWO, LLC ET AL., | * |
| Plaintiffs, | * |
| v. | * |
| GEORGE DIVEL III, | *    Civil No. 22-2027-BAH |
| Defendant. | * |
|  | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiffs One Triple Two, LLC, ("One Triple"), Benjamin Dodge ("Dodge"), Patrick Lasseter ("Lasseter"), and Adam Berkowitz ("Berkowitz," and, collectively, "Plaintiffs") brought this suit against Defendant George Divel III ("Defendant" or "Divel") and twenty unidentified John Does,[1] alleging several contract and torts claims relating to an underlying business transaction. ECF 1. Pending before the Court is Plaintiffs' motion for leave to file an amended complaint. ECF 73. Defendant filed an opposition at ECF 74. Plaintiffs did not file a reply. All filings include memoranda of law and exhibits.[2] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Plaintiffs' Motion is **DENIED**.

---

[1] As the complaint does not plead any facts that reference the John Doe defendants or in any way indicate their involvement with the events underlying this action, the complaint is DISMISSED without prejudice with respect to the John Doe defendants. *See Blake v. Race*, 487 F. Supp. 2d 187, 192 n.1 (E.D.N.Y. 2007) (dismissing unnamed John Doe defendants in a footnote when the plaintiff failed to "specify the role of any unnamed defendants in the infringing conduct").

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

## I.    BACKGROUND[3]

This case arises out of an alleged failed agreement for an entity with which Defendant is affiliated, TCP 1222, LLC ("TCP 1222"), to purchase the vast majority of One Triple's assets and 80% of the stock held by the individual Plaintiffs in another entity, Portland Innovations ("Portland").   ECF 1, at 5; ECF 1-1, at 1–24 (purchase agreement between TCP 1222 and Plaintiffs).    TCP 1222, One Triple, and Portland were engaged in cannabis cultivation, manufacturing, and distribution.   ECF 1, at 6.   In June 2018, TCP 1222, through Defendant, his associate, and their broker, approached Plaintiffs about purchasing the Portland stock and the One Triple assets.   ECF 1, at 3, 6.   That same month, an associate of Defendant sent an email on behalf of himself and Defendant to Plaintiffs with "proof of funds" sufficient to purchase the Portland stock and the One Triple assets.   *Id.* at 6–7; ECF 1-4, at 1–4.   This email included a screenshot of a Bank of America dashboard showing access to several accounts with combined funds of more than three million dollars.   *See id.*   The screenshot did not indicate whose Bank of America profile it displayed, nor did it show the relationship between the person whose profile it displayed and the displayed accounts.[4]   *Id.*   In July 2018, one of Defendant's associates sent Plaintiffs a letter of intent, drafted by Defendant, to purchase the One Triple assets and the Portland stock.   ECF 1, at 7.

In November 2018, Plaintiffs and TCP 1222 signed the "Original Purchase Agreement," which indicated that TCP 1222 was to pay $2,500,000 to Plaintiffs in exchange for the assets and stock.   ECF 1, at 6–7.   The Original Purchase Agreement indicated that it was to be "governed and

---

[3] The Court extensively set out the facts alleged in Plaintiffs' complaint in its memorandum opinion at ECF 63 and so repeats them only briefly here.

[4] For example, the screenshot did not indicate if the profile holder was the sole owner of these accounts or if they were joint accounts. *See* ECF 1-4, at 1–4.

construed and interpreted in accordance with the laws of the State of California" and that each party agreed "to commence any action, suit or proceeding relating hereto only in the courts of the State of California located in Oakland, California." ECF 1-1, at 20–21. Pursuant to the Original Purchase Agreement, TCP 1222 made an initial payment of $250,000 as a deposit, with the rest of the purchase price to be paid in future installments. *Id.* at 7.

On February 4, 2019, Plaintiffs notified TCP 1222, as well as Defendant and his associates, that all of Plaintiffs' pre-sale duties under the Original Purchase Agreement had been completed and Plaintiffs requested that closing occur within five days. ECF 1, at 8. Nearly five days later, on February 8, 2019, TCP 1222's attorney replied that TCP 1222 was "working through some 'administrative issues' and asked to delay the closing." *Id.* Defendant informed Plaintiffs that those issues related to retrieving money from a retirement account, and Defendant "led Plaintiffs to believe" that the retirement account belonged either to Defendant or one of his associates personally. *Id.*

On April 15, 2019, TCP 1222 "notified Plaintiffs that they did not have sufficient funds for Closing as they were still waiting" on the retirement funds. ECF 1, at 11. "Later that day, [TCP 1222] came clean and disclosed that they had been relying on investor funds all along and that their investors had backed out." *Id.* Plaintiffs had not previously been aware that the purchase was investor funded. *Id.*

Plaintiffs asserted that TCP 1222 is an "alter ego" of Defendant and that, as such, Defendant should be liable for TCP 1222's actions. ECF 1, at 3–4. Plaintiffs originally brought eight counts against Defendant: (1) breach of the Purchase Agreement; (2) breach of the security agreement; (3) breach of the promissory note; (4) intentional interference with prospective economic advantage; (5) negligent interference with prospective economic advantage; (6)

intentional misrepresentation; (7) negligent misrepresentation; and (8) negligence. *Id.* at 13–19.

Defendant then moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(3) and

12(b)(6). *See* ECF 60.

On May 13, 2024, the Court granted in part and denied in part Defendant's motion to

dismiss, allowing Plaintiffs' claims for intentional and negligent misrepresentation to proceed but

dismissing their breach of contract claims for failure to plead alter ego liability and also dismissing

their interference with prospective economic advantage claims for failure to identify an economic

relationship subject to interference.[5] ECF 63, at 16, 11, 14. The issue currently pending before

the Court is the Plaintiffs' motion to amend their complaint to address the deficiencies the Court

identified. Plaintiffs propose to expand the allegations relevant to both the alter ego and the

interference claims. ECF 73, at 3–7. Defendant opposes the motion and argues that Plaintiffs'

proposed amendments add little substance to the original complaint and so would be futile. ECF

74, at 4–10.

## II.    **LEGAL STANDARD**

Federal Rule of Civil Procedure Rule 15 provides that a party seeking to amend its pleading

after twenty-one days following service may do so "only with the opposing party's written consent

or the court's leave." Fed. R. Civ. P. 15(a)(2). However, the Rule requires courts to "freely give

leave [to amend] when justice so requires." *Id.* Moreover, the Fourth Circuit has explicitly

directed trial courts "to liberally allow amendment." *Galustian v. Peter*, 591 F.3d 724, 729 (4th

Cir. 2010). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper

subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v.

Davis*, 371 U.S. 178, 182 (1962). Courts generally deny leave to amend only if there is "undue

---

[5] The Court also dismissed all twenty of the unidentified John Doe defendants originally named in the complaint. ECF 63, at 1 n.1.

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment." *Id.*

"Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards: A district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules." *Katyle v. Penn Nat. Gaming, Inc.,* 637 F.3d 462, 471 (4th Cir. 2011) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 376 (4th Cir. 2008)) (internal quotation marks omitted). "An amendment is futile when the proposed amended complaint does not state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Oliver v. Dep't of Pub. Safety & Corr. Servs.,* 350 F. Supp. 3d 340, 346 (D. Md. 2018), *aff'd sub nom. Oliver v. Bartholomew,* 785 F. App'x 166 (4th Cir. 2019). Ultimately, the decision to grant leave to amend rests within the Court's discretion. *Id.*; *see also Laber v. Harvey,* 438 F.3d 404, 428 (4th Cir. 2006) (en banc).

## III.   ANALYSIS

### A.   Proposed Alter Ego Additions

Plaintiffs seek to correct the deficiencies in their original breach of contract claim by including further allegations regarding alter ego liability. They explain that under California law, "undercapitalization is a ground for piercing the corporate veil because it is 'the policy of the law that shareholders should in good faith put at the risk of the business unencumbered capital reasonably adequate for its prospective liabilities.'" ECF 73-2, at 16 (quoting *Ballentine on Corporations,* 302–03 (1946 ed.)). Their proposed amended complaint alleges that Divel misrepresented to Plaintiffs the source, amount, and nature of the funds he purported to control in order to pay for the purchase of Plaintiffs' business assets. *Id.* Initially, Plaintiffs allege that Divel

5

stated that he controlled sufficient funds from multiple entities to make the purchase, though later represented that the funds for the transaction were coming from his IRA account. *Id.* Meanwhile, though Divel had registered TCP 1222 on November 19, 2018, the proposed amended complaint contends that Divel "failed to capitalize the new entity in any amount whatsoever." *Id.* Accordingly, the proposed amended complaint alleges that only months later did Divel "admit[] to [P]laintiffs that there was no IRA account but, rather, that his investors for TCP 1222 never materialized." *Id.* Plaintiffs allege that Divel used TCP 1222 merely as a "shell and conduit" by which he defrauded Plaintiffs into transferring their business assets to him.[6] *Id.*

Defendant argues in response that such proposed amendments "fail to allege any novel facts supporting their claim that Defendant is the alter ego of TCP 1222." ECF 74, at 11. The Court agrees. Plaintiffs argue that the new allegations detail alleged undercapitalization and thus both evince "a unity of interest and ownership between Defendant and TCP 1222," ECF 73, at 2, and warrant piercing the corporate veil under California law, *id.* at 5. However, they overlook the fact that they previously detailed the proposed additions in their original complaint. *See* ECF 1, at 4, 8–9. The Court already concluded that such allegations were insufficient to state an alter ego claim because they failed to show a "unity of interest." ECF 63, at 13. Accordingly, the proposed amendments still fail to plead facts regarding Defendant's control over TCP 1222's daily operations and the separation, or lack thereof, between the two. Moreover, while Plaintiffs claim that their loss "can only be rectified by holding Divel personally liable for the debt of TCP 1222," ECF 73, at 5, this proposed addition still does not allege *facts* that would support this inference. *See* ECF 63, at 13–14. Though Plaintiffs have "shift[ed]" the location of the alter ego allegations

---

[6] The proposed amended complaint also alleges that Michel Warfield, the managing member of the related company TCP 1150, LLC, was a recipient of the fraudulently transferred assets. ECF 17-2, at 16. Warfield is not named as a defendant in the proposed amended complaint.

within the structure of the complaint, ECF 73, at 2, the proposed additions essentially repeat what already alleged in the original complaint; allowing the amendment would be "futile." *Foman*, 371 U.S. at 182.  Plaintiffs' motion to amend the complaint as to their alter ego claim is denied.

**B.    Proposed Interference with Prospective Economic Advantage Additions**

Plaintiffs also propose amending their original complaint to rectify the deficiencies the Court identified with their intentional and negligent interference with prospective economic advantage claims.  Specifically, Plaintiffs seek to add the following paragraph:

> In reliance on [Divel's and TCP 1222's] false promises to pay the Purchase Price for their business assets, Plaintiffs suspended their business of cultivating, manufacturing, distributing and retailing cannabis and cannabis products [at their property at 1222 47th Avenue, Oakland, California] in reliance on [Divel's and TCP 1222's] promises in the Purchase Agreement, the Security Agreement and the Promissory Note and Defendant Divel's affirmative representations of fact such as the Proof of Funds.

ECF 73-2, at 20.  Plaintiffs further propose adding the allegation that Defendant was "aware of the nature and profitability of Plaintiffs' business, because upon receipt of [the allegedly] false proof of funds, Plaintiffs provided Purchasers with substantial documentation of their business." *Id.* Finally, the proposed amended complaint contends that Defendant knew that the false promise to purchase Plaintiffs' assets would effectively "put [One Triple] out of business," a competitor to Defendant in the "business of cultivating, distributing, and retailing cannabis and cannabis products." *Id.* at 21.

These proposed additions still fail to correct the deficiencies the Court identified in Plaintiffs' original complaint.  Principally, they fail to identify any actual third party with whom Plaintiffs had an economic relationship.  The assertion that Defendant received "substantial documentation" which purportedly showed the profitability of Plaintiffs' business does not amount either to an allegation that some economic relationship existed between Plaintiffs and their customers nor an indication that Defendant knew of any specific relationships. *See Youst v. Longo,*

7

729 P.2d 728, 733 n.6 (Cal. 1987).  Such a contention remains too speculative and Plaintiffs have still "failed to plead the existence of an economic relationship with a third party sufficient to state a claim for intentional or negligent interference with prospective economic advantage." *See* ECF 63, at 16.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion to amend is DENIED.

A separate implementing Order will issue.

Dated: <u>July 22, 2025</u>                                                    <u>           /s/           </u>
                                                                        Brendan A. Hurson
                                                                        United States District Judge

8